**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NOE PUAC MENDEZ,<br><br>Petitioner,<br><br>v.<br><br>SENIOR WARDEN, ADELANTO DETENTION FACILITY, et al.,<br><br>Respondents. | CASE NO. 5:26-cv-03901-DOC-SK<br><br>**ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## BACKGROUND

Petitioner is a native and citizen of Guatemala detained by U.S. Immigration and Customs Enforcement (ICE) at the Adelanto ICE Processing Center. (ECF 1 at 2–3; ECF 12-1 at 2). He entered the United States without inspection in December 2019. (ECF 1 at 3; ECF 12-1 at 3). He is married with four children between ages six and eighteen, and works as a carpenter in construction. (ECF 1 at 3–4). In June 2024, petitioner was arrested for both driving without a license and while under the influence, as a result of which he was convicted and sentenced to three years' probation. (ECF 12-1 at 3). About six months later, he was arrested again for driving under the influence but also for possession of a controlled substance, with both charges apparently resolved through diversion. (*Id.*). Then, in December 2024, he was arrested on similar charges yet again, but that case was evidently dismissed. (*Id.*). And most recently in June 2026, petitioner was again arrested for driving under the influence. (*Id.*).

When ICE learned of petitioner's most recent arrest, agents awaited his release from local custody outside the police station in a planned enforcement operation on June 3, 2026.

According to the I-213 records, petitioner briefly ran from ICE agents before stopping and surrendering himself. (ECF 12-1 at 2). Still, the agents soon enough confirmed petitioner's identity, "advised [him] of his arrest, served a Warrant for Arrest of Alien (Form I-200), [and] took him into ICE custody without incident." (ECF 12-1 at 2). For his part, petitioner alleges that ICE agents did not present him with the arrest warrant. (ECF 1 at 3–4). In any event, he has been detained at the Adelanto detention facility since his June 3, 2026 arrest. (ECF 1 at 3).

Petitioner is charged as removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without admission or parole. (ECF 12-1 at 1, 3). Before his June 2026 arrest, petitioner had no known encounter with immigration authorities. Nor is there any evidence that petitioner's criminal history makes him subject to mandatory detention under 8 U.S.C. § 1226(c). Petitioner is thus detained under 8 U.S.C. § 1226(a), the INA's discretionary detention statute, as a first-time detainee apprehended in the interior of the country.[1] (ECF 1 at 5; ECF 12 at 2). Even so, since his arrest two months ago, petitioner has evidently neither requested nor been given a custody redetermination hearing before an immigration judge pending his removal proceedings, which petitioner says will include forthcoming applications for asylum and withholding of removal. (ECF 1 at 3; ECF 12 at 2–3).

Meanwhile, on July 13, 2026, petitioner filed an unverified pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241, along with a motion for a temporary restraining order (TRO) and preliminary injunction (PI) seeking immediate release. (ECF 1, 2). He also moved

---

[1] Before counsel was appointed, the pro se petition implied that petitioner was detained under 8 U.S.C. § 1231(a)(6), and so it asked for release in accordance with *Zadvydas v. Davis*, 533 U.S. 678 (2001), on the ground that petitioner's removal from the country is not reasonably likely in the foreseeable future. (ECF 1 at 9). But counsel's briefs do not revive that mistaken contention, since petitioner is not detained pending post-removal-order proceedings governed by § 1231(a)(6). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1063–65 (9th Cir. 2008).

for appointment of counsel. (ECF 3). In response to those motions—and the day after it gave notice of the expedited briefing schedule set by General Order 26-05—this Court ordered that petitioner not be transferred from this district while his petition was pending and, at the same time, appointed counsel from the Federal Public Defender's Office to assist petitioner. (ECF 8). Evidently believing that the TRO/PI motion was still live despite the Court's July 15, 2026 stay-put order, petitioner's newly appointed counsel filed a further reply in support of that motion on July 29, 2026, claiming that it should be granted as unopposed—with an order of immediate release. (ECF 15). But respondents had timely answered the petition the week before, on July 21, 2026, opposing immediate release—the same relief sought in the TRO/PI motion. (ECF 12). Otherwise, respondents maintained that petitioner was only entitled to habeas relief in the form of a prompt bond hearing under § 1226(a). (*Id.*). So, as a practical matter, the TRO/PI motion was not unopposed on the merits. Petitioner then timely replied to respondents' answer (with permitted extension) on August 14, 2026, echoing or incorporating essentially the same arguments from his July 29 reply. (ECF 13, 14, 18). This habeas action is thus fully briefed and ready for disposition.

## II.

## DISCUSSION

Read with the benefit of counsel's filings, the habeas petition seeks petitioner's release on the grounds that his arrest and detention on June 3, 2026 violated both the INA and his Fifth Amendment right to procedural due process. (ECF 15, 18). For their part, respondents do not deny that the petition should be granted but maintain that the appropriate habeas remedy is a prompt bond hearing (within 7 days) before an immigration judge in accordance with § 1226(a). (ECF 12 at 3–4). They oppose petitioner's demand for unconditional release because—not

having encountered ICE before June 2026—he was never previously released or paroled by the agency after an initial custody determination. (ECF 12 at 2). They add that petitioner's criminal history "weighs in favor of a hearing and against immediate release because it bears on any discretionary bond." (*Id.* at 3).

As pertinent here, the parties do not disagree—for habeas purposes—that petitioner was detained in violation of federal law to the extent that he was ever considered categorically ineligible under the INA for a bond hearing before an immigration judge. Nor could they: "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026); *see Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). The parties' only dispute, then, is about whether the remedy for that violation under § 2241 should be unconditional release or the missing procedure—a bond hearing. On the facts here, the Court agrees with respondents. Habeas petitions must be resolved "as law and justice require," 28 U.S.C. § 2243, so "federal courts may delay the release of a successful habeas petitioner in order to provide the [government] an opportunity to correct the constitutional violation found by the court." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987); *accord Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020). Consistent with that requirement, the Court finds that a conditional habeas writ should issue ordering petitioner's release within 7 days, unless he is given the § 1226(a) bond hearing due to noncitizens apprehended for the first time in the interior of the United States.

That is the remedy which courts—including in this district—have regularly ordered where, as here, the detainee was never previously released on bond or parole but was entitled to

receive a detention hearing with an immigration judge. *See*, *e.g.*, *Fuentes v. Mullin*, No. 5:26-CV-01651-KS, 2026 WL 1847436, at *8 (C.D. Cal. June 25, 2026); *Ramirez v. Warden*, No. 5:26-CV-02714-CV, 2026 WL 1658506, at *2 (C.D. Cal. June 5, 2026); *Herrera v. Mullin*, No. 5:26-CV-01561-CAS, 2026 WL 915184, at *1 (C.D. Cal. Apr. 3, 2026); *Zabala v. Bowen*, No. 5:26-CV-0918-MRA, 2026 WL 874740, at *2 (C.D. Cal. Mar. 26, 2026). "Although [p]etitioner has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole." *Jemna v. Warden of Otay Mesa Det. Ctr.*, No. 3:26-CV-00725-RBM, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026). Thus, petitioner's reliance on the cases that may have ordered unconditional release "when the Government seeks to re-detain a noncitizen previously released under Section 1226(a)" is misplaced here. *Herman v. DHS*, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at *4 (C.D. Cal. June 12, 2026); *see Sheng v. Janecka, et al.*, No. 5:26-CV-04398-BFM, 2026 WL 2365088, at *1 (C.D. Cal. Aug. 14, 2026) (finding "analogy to that body of caselaw fails, however, because Petitioner was not previously released on parole"); *Melkumyan v. Semaia*, No. 5:26-cv-03019-MBK, 2026 WL 1772761, at *2 (C.D. Cal. June 16, 2026) (explaining that in cases ordering immediate release for procedural due process violation, "petitioners had been previously released by immigration authorities based on a determination that their detention was not necessary, only to be later re-detained").

Unlike those cases, which may have perhaps enforced an "implied promise" of conditional liberty based on a prior agency release determination (ECF 1 at 5), federal immigration authorities never apprehended—and then conditionally released petitioner—before June 2026. His walk out of the local police station on June 3 marked the end of state custody on a state arrest, not a release after a federal immigration determination that he was neither a flight

risk nor a danger to the community. And there is nothing in petitioner's record suggesting that he ever sought a bond hearing soon after his arrest—as he was free to—under agency regulations, *see* 8 C.F.R. §§ 1236.1(d)(1), 1003.19, or that he requested one but was categorically denied it based on an immigration judge's statutory misclassification of petitioner as a mandatory detainee under § 1225(b)(2)(A). Under these circumstances, the remedy of a prompt bond hearing in accordance with § 1226(a)—the detention statute applicable to petitioner—comports not only with the INA but also with constitutional due process. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–11 (9th Cir. 2022). Petitioner's professed showing of family ties, steady work, rehabilitation, and other favorable factors supporting release on bond is precisely what § 1226(a) and its implementing regulations invite him to make to the immigration judge at that hearing. *See Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Besides, Congress placed the frontline responsibility for such a discretionary detention decision squarely in the immigration—not federal—courts. *See* 8 U.S.C. § 1226(e).

Contrary to petitioner's contention, the circumstances around his arrest itself provide no independent basis for immediate release. For one thing, the record does not support the factual predicate of his argument—that he was arrested without a warrant. The I-213 records state that ICE agents had a "Warrant for Arrest of Alien (Form I-200)" at the time of petitioner's arrest. (ECF 12-1 at 2). So even though petitioner carefully alleges (in his unverified petition) that he never saw the warrant, that is not the same as reliably proving that the arrest was executed without a warrant. *See Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (In "federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995) ("The burden of establishing a basis for exclusion of evidence from a government record falls on the opponent of the evidence, who must come

forward with enough negative factors to persuade the court not to admit it."); *see also* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true[.]"). For another thing, even if the I-213 records are inaccurate on this point, the INA permits immigration authorities to make warrantless arrests. *See* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). And petitioner cites no authority—nor is the Court aware of any—suggesting that the Constitution prohibits warrantless arrests otherwise authorized by the INA and relevant implementing regulations.

But even crediting petitioner's account, release from custody would not follow as the proper § 2241 remedy for the mere absence of an arrest warrant or the failure to serve it. A habeas petition tests the lawfulness of a detainee's *present* custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *accord Alvarez-Mendez v. Stock*, 941 F.2d 956, 960 (9th Cir. 1991) ("Because this case involves a petition for the writ of habeas corpus, and not a claim for damages for illegal detention, the only issue before us is whether [the petitioner's] detention is illegal today."). Thus, "if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923); *see Streeter v. Craven*, 418 F.2d 273, 274 (9th Cir. 1969) ("[D]efects in an arrest are not cognizable in habeas corpus."); *cf INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984) (The "body" of an unlawfully arrested detainee is not "itself suppressible as a fruit of an unlawful arrest."). As all agree here, petitioner's present detention pending removal proceedings is authorized by § 1226(a). And "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 523, 531 (2003). So no matter the circumstances of the arrest that brought him into custody

initially, petitioner will have the chance to obtain release—and thus supersede his initial seizure—at a custody redetermination hearing before an immigration judge.[2] *See*, *e.g.*, *L-J-P-L- v. Wamsley*, No. 3:25-CV-1390-IM, 2025 WL 2430268, at *6 & n.3 (D. Or. Aug. 22, 2025) (rejecting release as "appropriate remedy" for "alleged violations" during initial arrest because "[e]ven if these violations occurred, they are not appropriately raised in a habeas petition, which considers the lawfulness of a continuing detention").

Finally, to the extent that petitioner thinks it should be the government's burden (by clear and convincing evidence or otherwise) to justify his detention—rather than his to justify release by a preponderance of the evidence—at the bond hearing ordered here, neither the Supreme Court nor the Ninth Circuit has required such burden-shifting for a first-time detainee's bond hearing under § 1226(a). If anything, the Ninth Circuit has held the opposite. *See Rodriguez Vazquez*, 2026 WL 2196424, at *5 ("A § 1226(a) detainee will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community."). And the Ninth Circuit has cautioned against reading circuit or Supreme Court precedents as "placing the burden on the government to justify the continued detention of an alien, much less through an elevated 'clear and convincing' showing." *Rodriguez Diaz*, 53 F.4th at 1211; *see Wang v. Semaia*, No. 5:26-cv1028-MWF, 2026 WL 1047907, at *2 (C.D. Cal. Apr. 14, 2026) (The "Ninth Circuit has squarely upheld the constitutionality of placing the burden on

[2] That is not to imply that an unlawful arrest is acceptable or condoned—it is only to recognize that release on habeas corpus is not ordinarily the correct remedy for such a defect. *See Sormunen v. Nagle*, 59 F.2d 398, 398–99 (9th Cir. 1932) (habeas petitioner's "contention that he was taken in custody prior to the issuance of a warrant of arrest is immaterial"); *Wolck v. Weedin*, 58 F.2d 928, 930 (9th Cir. 1932) ("Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law."). Nor does it mean there is no remedy at all. Evidence secured by an unlawful arrest may warrant its suppression in removal proceedings, *see United States v. Garcia-Beltran*, 443 F.3d 1126, 1132 (9th Cir. 2006); *Gonzalez-Rivera v. INS*, 22 F.3d 1441, 1443 (9th Cir. 1994), or a damages cause of action might lie for torts including false imprisonment, *see Ibarra-Perez v. United States*, 154 F.4th 989, 999–1000 (9th Cir. 2025). That these remedies fall short of release does not expand the writ of habeas corpus to cover the shortfall.

the noncitizen in § 1226(a) bond proceedings.") (citing *Rodriguez Diaz*, 53 F.4th at 1210–12). Thus, it is "for the Ninth Circuit and Supreme Court to decide" if additional "procedures are constitutionally required to attach to [§ 1226(a)] hearings," *Al-Sadeai v. US. Immigr. & Customs Enf't*, No. 3:21-CV-00296, 2025 WL 905522, at *7 (S.D. Cal. Mar. 25, 2025)—especially when, as here, there has been no prior order of release or conditional parole granted by the government.

**III.**

**CONCLUSION**

For all these reasons, the petition under 28 U.S.C. § 2241 is conditionally granted. Petitioner NOE PUAC MENDEZ (A# 248-001-863) is ordered released from ICE custody within seven days of this order, unless respondents provide petitioner an individualized custody hearing before an immigration judge under 8 U.S.C. § 1226(a).[3] The TRO/PI motion, if not already resolved, is denied as moot. Judgment in petitioner's favor consistent with this order will be entered accordingly.

IT IS SO ORDERED.

DATED: August 20, 2026

DAVID O. CARTER
United States District Judge

[3] To the extent that petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the hearing ordered here is intended to adhere to that judgment. Moreover, nothing ordered here forecloses other avenues of administrative relief. Anytime before a final removal order is entered, petitioner may seek a custody redetermination from the immigration court based on materially changed circumstances. *See* 8 C.F.R. § 1003.19(e). And prolonged-detention hearings—so-called *Rodriguez* hearings—are held automatically at six-month intervals for noncitizens detained in an ICE facility within this district. Finally, nothing in this order should impair any rights petitioner may have as a member of the putative class in *L.T. v. ICE*, No. 5:26-cv-00322-SSS, the active case in this district addressing conditions of confinement at the Adelanto facility.